BOUDIN, Circuit Judge,
dissenting.
On October 6, 2008, the plaintiff-appellant Stanley Kolbe took out a $197,437 loan secured by a mortgage on Kolbe’s home in Atlantic City, New Jersey, in an area designated by the government as subject to flooding. The mortgage was guaranteed by an agency within the Department of Housing and Urban Development (“HUD”), and as required, the mortgage used a standard form that had been approved by HUD, 24 C.F.R. § 200.80 (2012). The mortgage contained the following provision:
4. Fire, Flood and Other Hazard Insurance. Borrower shall insure all im *126 provements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary [of HUD].
The first two sentences, referring to “any hazards, casualties, and contingencies,” empower the lender to set the “amounts and periods” of insurance for all such threats. The third sentence reflects a requirement imposed by the government under a federal program by which it subsidizes flood insurance in flood prone areas: in aid of that program, lenders are restricted in making loans unless the borrower agrees to maintain flood insurance in the minimum amounts set by the government regardless of whether the lender independently requires flood insurance. 42 U.S.C. §§ 4012(c), 4012a(b)(l) (2006).
When Kolbe’s original mortgage holder went bankrupt in 2009, the mortgage passed into the hands of entities associated with Bank of America (and for convenience we refer only to that bank). Within a couple of months the bank wrote to Kolbe requiring that he purchase an additional $46,000 in flood insurance. The letters advised that if he did not purchase such insurance within a set period, the bank would purchase it for him and charge him for the cost but that this might well be more expensive than if he obtained the insurance on his own behalf.
Kolbe complied, purchasing the insurance out of an escrow account maintained on his behalf by the bank for insurance and similar purposes, and not long after filed the current class action in federal district court. His complaint, alleging breach of contract and breach of the implied covenant of good faith and fair dealing, claimed that it was unlawful for the bank to require flood insurance in any amount exceeding that required by the government under the flood insurance program already mentioned and reflected in the third sentence of the paragraph quoted above.
The district court, without certifying a class, granted the bank’s motion to dismiss. Fed.R.Civ.P. 12(b)(6). The court found that the original loan agreement clearly permitted the bank to require more insurance for “any hazard,” the Secretary of HUD’s flood insurance requirement reflecting merely a minimum imposed by the government; and the court ruled that no facts alleged in the complaint about the bank’s motive, or the additional insurance required by the bank, impugned the bank’s good faith. Kolbe v. BAC Home Loans Servicing, L.P., No. 11-10312-NMG, 2011 WL 3665394 (D.Mass. Aug. 18, 2011). This appeal followed.
The insurance required by the government, under the third sentence of the above quoted paragraph 4 in the mortgage, equated to the outstanding unpaid balance on the loan, i.e., $197,437 less whatever payments Kolbe had already made to reduce the principal balance. The additional $46,000 requested by the bank apparently aimed to raise the total insurance to the approximate replacement cost of Kolbe’s house if it were destroyed in a flood — a familiar although not invariable practice in mortgage lending and reflected in government guidance by the Federal Emergency Management Agency.[24]
*127 The bank’s interest is obvious enough: it seeks not merely repayment of the outstanding balance but the maintenance of a loan on which it earns the designated interest for the period agreed to — a goal served by providing funds to restore a damaged house that might otherwise be abandoned. Further, despite the mortgage and any clause in the insurance contract entitling the lender to insurance proceeds, other claims, such as priority tax claims, may supercede the bank’s own right to insurance proceeds and leave it without full coverage for the balance due. N.J. Stat. Ann. § 54:5-9 (West 2012). See generally Alexander, Tax Liens, Tax Sales, and Due Process, 75 Ind. L.J. 747, 770-71 & nn. 129-130 (2000).
The first two sentences of the relevant paragraph of the mortgage agreement (block quoted above) unambiguously give the bank the right to require more flood insurance by empowering it to require insurance in the amount it specifies for “any hazards.” A flood qualifies as a hazard, commonly defined as “an unavoidable danger or risk, even though often foreseeable.” The Random House Dictionary of the English Language 879 (2d ed. unabridged 1987). The third sentence is directed to what the government sets as a minimum amount of flood insurance for its own reasons and neither qualifies nor contradicts the right of the bank — explicitly reserved — to set a different amount that is higher than the government minimum.
Kolbe says that because the third sentence specifically deals with flood insurance, this specific provision should implicitly limit the first two sentences to exclude floods. But a specific provision trumps a general-provision only when the two are in conflict, so it is necessary to disregard or limit one or the other. See Farnsworth, 2 Farnsworth on Contracts § 7.11, at 297 (3d ed. 2004). Here, the two provisions are. consistent: one lists the bank’s requirements, and the other lists the government’s requirements and, since they are both minimum requirements, both can be met by flood insurance in the amount of the higher requirement.
Relatedly, Kolbe asserts that if the first two sentences are read to include floods, the third sentence will be rendered meaningless surplusage, a result that should be avoided because the third sentence uses the word “also.” But this too is false; HUD’s requirement applies even if the lender requires less or no flood insurance, and the reference to HUD’s requirements was specifically required by federal law, see 24 C.F.R. § 203.16a(a)(2), which is presumably why they were made the subject of a separate sentence. Without some such warning, the bank would itself be subject to monetary penalties under the flood insurance regime. 42 U.S.C. § 4012a(f)(2).
Kolbe argues that the phrase “any hazards” should be read to exclude floods because in the insurance industry, hazard insurance is traditionally seen as a category separate from flood insurance. The contention rests on a confusion about industry practice. Many homeowners’ hazard insurance policies, known as “all-risk” policies, cover against all physical risks unless specifically excluded, Thomas & Randall, New Appleman on Insurance Law § 41.02[l][a], at 41-15, § 41.02[l][a], at 41-15 (library ed. 2011), and then con *128 tain an express “flood exclusion” provision that excludes flooding and water damage from coverage, id. ch. 43, at 43-2, 43-14.
Thus, the standard all-risk policy does treat floods as a hazard but excludes it from the policy as a hazard that the policy does not choose to insure. Consider, for example, typical language of a flood exclusion:
We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.
... Water
... Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not ...
In re Katrina Canal Breaches Litig., 495 F.3d 191, 199 (5th Cir.2007), cert. denied, 552 U.S. 1182, 128 S.Ct. 1230, 170 L.Ed.2d 63 (2008) (quoting policy language).
In other words, the standard policy excludes flood insurance, and relegates the insured to seek special insurance for floods, because the policy explicitly says that floods are not covered by the policy. By contrast, nothing in the loan agreement says that the bank’s authority to fix the amount of insurance for “any hazards” excludes floods. The reference to standard hazard policies, which do contain such an exclusion, is helpful to the bank and not to Kolbe — by confirming that “hazard” in-eludes “flood” unless expressly excluded— as if any such help were needed.
Similarly, while some HUD documents list “hazard insurance” and “flood insurance” separately,[25] this merely reflects the reality that because of the express exclusions in all-risk policies, a homeowner who wants flood insurance will have to obtain it separately. But the fact that a separate policy must be purchased is irrelevant: the mortgage holder has an explicit right to require increased insurance for “any” hazard regardless of how the policy for the hazard in question is packaged or procured. In fact, both the statute creating the federal flood insurance program and a handbook from the Federal Emergency Management Agency refer to “special flood hazards.” 42 U.S.C. § 4012a(a); Compl. ex. 2, at 4.
Turning to the good faith count, the governing law in New Jersey requires proof of bad motive for a claim of breach of the implied covenant. Wilson v. Amerada Hess Corp., 168 N.J. 236, 773 A.2d 1121, 1130 (2001). Kolbe’s main position in the district court was that the contract by its terms limits the bank to the amount of flood insurance required by the federal government, so anything more is necessarily an act of bad faith. This claim depends on the premise that Bank of America breached the contract, which as discussed above, is self-evidently wrong.
On appeal, Kolbe now suggests that “the only reason Defendants demanded additional flood insurance was an improper effort to self-deal ... collecting for [them]sel[ves] or [their] affiliates insurance bro *129 kerage commissions and excessive premiums.” Appellants’ Br. at 14-15. The complaint contains no such allegation and so any such claim is forfeit. In re New Motor Vehicles Canadian Exp. Antitrust Litig., 533 F.3d 1, 5-6 (1st Cir.2008). Anyway, as already noted, the bank has self-evident commercial reasons for wanting a margin of protection over and above the unpaid principal balance and it asked Kolbe to buy the insurance himself.
This appeal calls for little more than a per curiam affirmance of a plainly correct disposition by the district court. It is one thing to read ambiguous language in favor of the borrower; it is quite another to disregard clear language that has only one sensible reading supported by salient practical reasons for why that reading was intended. Language of the same ilk appears to be common in loan agreements. To let this case proceed will be the source of great mischief.

. National Flood Insurance Program: Mandatory Purchase of Flood Insurance Guidelines 27 (2007), http://www.fema.gov/library/view Record.do?id=2954. Replacement cost insur *127 anee has been endorsed as necessary to prevent ‘'underinsurance,” whereby property owners are left with insufficient resources to rebuild their property in the wake of a catastrophe. See generally Wells, Insuring to Value: Meeting a Critical Need (2d ed. 2007); Klein, When Enough Is Not Enough: Correcting Market Inefficiencies in the Purchase and Sale of Residential Property Insurance, 18 Va. J. Soc. Pol’y&L. 345 (2011).

. For example, HUD’s handbook on insured mortgages lists items that must be included in an escrow account, including "hazard insurance" and "flood insurance premiums.” HUD Handbook 4330.1, ch.2, § 2-1 (D), http:// portal.hud.gov/hudportal/documents/huddoc? id=43301c2HSGH.pdf. Similarly, HUD's guide brochure on settlement costs related to home purchases lists "Hazard Insurance Premium” and "Flood Insurance” as separate settlement costs. U.S. Dept, of Housing and Urban Dev., Buying Your Home: Settlement Costs and Helpful Information 16 (June 1997), available at http://portal.hud.gov/hudportal/ documents/huddoc?id=DOC_12893.pdf.